UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ARNOLD & COMPANY, LLC, and CRAIG ARNOLD, individually, | § § § § § § § § § § § § § § | No. SA:13–CV–146–DAE |
| Plaintiffs, | | |
| vs. | | |
| DAVID K. YOUNG CONSULTING, LLC, | | |
| Defendant. | | |

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is a Motion for Partial Summary Judgment filed by Plaintiff Craig Arnold ("Arnold"). (Dkt. # 62.) On January 20, 2015, the Court heard oral argument on the Motion. Kyle C. Watson, Esq., appeared at the hearing on behalf of Plaintiff; William H. Ford, Esq., appeared at the hearing on behalf of Defendant David K. Young Consulting, LLC ("DKYC"). After reviewing the Motion and the supporting and opposing memoranda, and considering the parties' arguments at the hearing, the Court **GRANTS** Plaintiff's Partial Motion for Summary Judgment. (Dkt. # 62.)

BACKGROUND

On March 27, 2012, Plaintiff Arnold & Co., LLC and DKYC executed an Asset Purchase Agreement ("the Agreement"). (Dkt. # 62-1.)

1

Pursuant to that agreement, DKYC agreed to purchase Arnold & Co., LLC for the amount of $400,000.  (Id. at 2.)  As part of the Agreement, the parties also agreed that Arnold would be retained as an employee of DKYC.  (Id., Ex. E.)  According to both parties, the relationship between DKYC and Arnold deteriorated, and on December 28, 2012, DKYC terminated Arnold's employment.  (Dkt. # 61 ¶ 14; Dkt. # 52 ¶ 15.)

The parties each filed suit against each other pursuant to this Court's diversity jurisdiction, and on April 8, 2013, the Court consolidated those cases. (Dkt. # 9.)  DKYC's Amended Complaint lists eleven causes of action against Arnold.  DKYC asserts claims for breach of contract, promissory estoppel, tortious interference with contracts, conversion, violations of the Texas Deceptive Trade Practices Act ("DTPA"), fraud, fraud by nondisclosure, violations of the Theft Liability Act, and trade secret misappropriation.  (Dkt. # 52 ¶¶ 20–38.) DKYC also asks the Court to enforce the covenant not to compete that was ancillary to or part of the Agreement, and for a permanent injunction against Arnold.  (Id. ¶¶ 39–47.)

On April 28, 2014, Arnold filed the Partial Motion for Summary Judgment (Dkt. # 62) that is now before the Court.  On May 12, 2014, DKYC filed a Response.  (Dkt. # 65.)  On May 27, 2014, Arnold filed a Reply.  (Dkt. # 68.)

## LEGAL STANDARD

Summary judgment is proper where the evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. Davis v. Fort Bend Cnty., 765 F.3d 480, 484 (5th Cir. 2014) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with specific facts that establish the existence of a genuine issue for trial. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).

The court evaluates the proffered evidence in the light most favorable to the nonmoving party. Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003). The court "examines the pleadings, affidavits, and other evidence introduced in the motion, resolves any factual doubts in favor of the non-movant, and determines whether a triable issue of fact exists." Leghart v. Hauk, 25 F. Supp. 2d 748, 751 (W.D. Tex. 1998). However, "[u]nsubstantied assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).

DISCUSSION

Arnold asks the Court to grant summary judgment in his favor on DKYC's fraud,[1] fraud by nondisclosure,[2] and DTPA[3] claims. (Dkt. # 62 ¶ 9.) Arnold argues that he is entitled to partial summary judgment because (1) § 6.18 of the Agreement bars DKYC's claims arising from representations allegedly made by Arnold prior to closing, and (2) the transaction at issue is an "exempt transaction" under the DTPA. (Id. ¶¶ 8, 12.)

---

[1] Under Texas law, the elements of a fraud claim are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001).

[2] To establish fraud by nondisclosure under Texas law, a plaintiff must prove: (1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge. Blankinship v. Brown, 399 S.W.3d 303, 308 (Tex. App.—Dall. 2013, pet. denied).

[3] The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading, or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury. Bus. Staffing, Inc. v. Jackson Hot Oil Serv., 401 S.W.3d 224, 236 (Tex. App.—El Paso 2012, pet. denied).

I.     Representations Made Prior to Closing

Arnold first argues that § 6.18 of the Agreement bars all of DKYC's claims arising directly from representations allegedly by made by Arnold prior to closing, because DKYC did not raise those claims within the six-month limitations period defined by the Agreement.  (Id. ¶ 8.)  Section 6.18 of the Agreement reads in full:

> The representations, warranties, and covenants of the respective Parties hereto and contained in or made pursuant to this Agreement or any other Transaction Document, other than the promissory note to be delivered by Purchaser to Seller hereunder, shall survive the execution and delivery of this Agreement and the Closing for a period of six (6) months and shall in no way be affected by any investigation of the subject matter thereof made by or on behalf of any Party.

(Dkt. # 62-1 at 10.)

The Agreement closed on March 27, 2012.  (Id.)  Under the terms of this section, the described representations, warranties, and covenants expired on December 27, 2012.  According to Arnold, this language forecloses any claims against him which are premised on representations made prior to closing—namely, DKYC's fraud, fraud by nondisclosure, and DTPA claims—because DKYC asserted these claims for the first time on October 16, 2013.  (Dkt. # 62 ¶¶ 8–9.)

DKYC responds that Arnold is mistaken for three reasons.  First, DKYC argues that a more reasonable interpretation of this language is that any representations, warranties, and covenants would not merge into the Agreement,

which contains an "as is" provision, until six months after closing.  (Dkt. # 65 at 2.)  Second, DKYC argues that the "as is" language does not negate its DTPA allegations because it does not comply with § 17.42 of the Texas Business & Commercial Code.  (Id. at 3.)  Last, DKYC argues that even if Arnold's interpretation of the Agreement were correct, § 16.070 of the Texas Business & Commercial Code voids § 6.18 of the Agreement.  (Id. at 4.)

>   A.   Interpretation of § 6.18

Because this action comes before this Court based on diversity of citizenship, the Court applies the substantive law of the state of Texas.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Admiral Ins. Co. v. Ford, 607 F.3d 420, 422 (5th Cir. 2010).  When interpreting contracts, Texas courts' "primary concern is to ascertain and give effect to the written expression of the parties' intent." NuStar Energy, L.P. v. Diamond Offshore Co., 402 S.W.3d 461, 465 (Tex. App.—Hous. [14th Dist.] 2013, no pet.) (citing Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am., 341 S.W.3d 323, 333 (Tex. 2011)).  Courts "give terms their plain and ordinary meaning unless the contract indicates that the parties intended a different meaning."  Id. at 466 (citing Dynegy Midstream Servs., Ltd P'ship v. Apache Corp., 294 S.W.3d 164, 168 (Tex. 2009)).  A court must "examine the writing as a whole to harmonize and give effect to all of the contract's provisions." Id. (citing Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)).  Finally, courts will

avoid constructions that are "unreasonable, inequitable, and oppressive." Id. (citing Frost Nat'l Bank v. L & F. Distribs., Ltd., 165 S.W.3d 310, 312 (Tex. 2005) (per curiam)).[4]

As explained above, Arnold argues that § 6.18 of the Agreement precludes DKYC from asserting claims arising from representations made prior to closing more than six months after the closing date. (Dkt. # 62 ¶ 10.) DKYC urges the Court to read § 6.18 of the Agreement in conjunction with Article III of the Agreement, which provides:

> Seller shall convey, transfer, assign and deliver to Purchaser, and Purchaser shall purchase, accept, and acquire from Seller pursuant to a bill of sale containing a standard warranty of title, but otherwise in "as is" condition without any representations or warranties whatsoever . . . the following [assets].

(Dkt. # 62-1 at 3.) According to DKYC, these two provisions together mean that any representations, warranties, and covenants would not merge into the Agreement until six months after closing. (Dkt. # 2.)

The Court agrees with Arnold. Texas courts have held that claims arising from sellers' warranties or representations are time-barred by provisions similar to § 6.18 of the Agreement. In Heil Co. v. Polar Corp., 191 S.W.3d 805, 813 (Tex. App.—Fort Worth 2006, pet. denied), the sellers warranted in a stock

---

[4] The Court notes that at oral argument, both parties stated that DKYC's previous counsel drafted the Agreement. Under Texas law, a contract will be construed against the drafter if the contract is found to be ambiguous. Creel v. Hous. Indus., Inc., 124 S.W.3d 724, 749 n.7 (Tex. App.—Hous. [1st Dist.] 2003, no pet.).

purchase agreement that they had good and marketable title to specified assets.  Id. at 813.  The agreement included a provision titled "Survival of Representations and Warranties," which provided that "all representations and warranties shall survive the Closing for a period of 15 months."  Id.  The closing occurred in 1995, and the buyer asserted a claim for breach of warranty several years later.  Id. at 808–09.  The Texas Court of Appeals held that this claim was "expressly time-barred by the fifteen-month limitations period in [the agreement.]"  Similarly, claims arising from representations made prior to closing in this case are time-barred by the six-month survival period provided for in § 6.18.[5, 6]

---

[5] The Court notes that Arnold has also brought a claim for fraud against DKYC regarding representations made prior to closing.  (Dkt. # 61 ¶ 24.)  That claim is foreclosed for the same reasons stated above.

[6] At the hearing, counsel for DKYC also argued that the Agreement itself was the product of fraud, and that as such, Arnold cannot now take advantage of its terms.  In other words, DKYC appears to argue that the Agreement is invalid under a theory of fraudulent inducement, although the Court notes that DKYC has not alleged a claim for fraudulent inducement.  Texas law imposes a duty to refrain from using fraudulent misrepresentations to induce another to enter into a contract, and parties are not bound by contracts procured by fraud.  Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 46 (Tex. 1998).  However, DKYC stated its position that the Agreement is a valid, enforceable contract in its Amended Complaint and asks the Court to enforce several of its other provisions.  (See Dkt. # 52 ¶¶ 21, 40–41, 43–46.)  Because fraudulent inducement is a defense to the entire contract, DKYC cannot simultaneously urge the Court to find that the Agreement is valid and binding in some respects while arguing that it is invalid as the product of fraud in others.  See LDF Const., Inc. v. Bryan, 324 S.W.3d 137, 146 (Tex. App.—Waco 2010, no pet.); In re FirstMerit Bank, N.A., 52 S.W.3d 749, 755 (Tex. 2001) ("[A] litigant who sues based on a contract subjects him or herself to the contract's terms.").  Thus, DKYC cannot

Furthermore, the Court finds that the "as is" provision in Article III of the Agreement does not modify the survival provision in § 6.18, at least with respect to the claims at issue in this Motion. In Article III of the Agreement, DKYC agreed to purchase enumerated assets in "as is" condition, without any representations or warranties whatsoever. Those assets included Arnold's customer lists, sales prospects, client contracts, and work in progress. (Dkt. # 62-1 at 3.) Although the alleged misrepresentations upon which DKYC's fraud, fraud by nondisclosure, and DTPA claims are premised are related to these assets, DKYC is not attempting to "return" any of these assets to Arnold or back out of this portion of the Agreement. Instead, DKYC asserts that it would not have purchased those assets, or would have purchased them for a reduced price, but for Arnold's alleged misrepresentations. (Dkt. # 52 ¶¶ 30, 32, 34.) Thus, the "as is" provision is inapplicable to the claims at issue here.[7]

---

avoid § 6.18 of the Agreement while asking the Court to enforce other parts of the contract.

[7] DKYC also argues that the "as is" provision does not foreclose its DTPA claims because that provision is void pursuant to § 17.42 of the Texas Business & Commercial Code. (Dkt. # 65 at 3.) Under that section, any waiver of the DTPA must be:
    (1) conspicuous and in bold-face type of at least 10 points in size;
    (2) identified by the heading "Waiver of Consumer Rights," or words of similar meaning; and
    (3) in substantially the following form:
      "I waive my rights under the Deceptive Trade Practices-Consumer Protection Act, Section 17.41 et seq., Business & Commerce Code, a law

B.      Section 16.070 of the Texas Business & Commercial Code

DKYC argues that even if Arnold's proffered interpretation of § 6.18 of the Agreement is correct, § 16.070 of the Texas Civil Practices and Remedies Code invalidates that provision. (Dkt. # 65 at 4.) That section provides:

> (a) Except as provided by Subsection (b), a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.
> (b) This section does not apply to a stipulation, contract, or agreement relating to the sale or purchase of a business entity if a party to the stipulation, contract, or agreement pays or receives or is obligated to pay or entitled to receive consideration under the stipulation, contract, or agreement having an aggregate value of not less than $500,000.

Tex. Civ. Prac. & Rem. Code § 16.070.

Arnold replies that this section applies only to breach of contract claims, and does not apply to the extra-contractual claims asserted by DKYC in this case. (Dkt. # 68 ¶ 7.) The Court agrees that the plain language of the statute supports this position: it bans contract clauses which limit the time to bring suit <u>on the stipulation, contract, or agreement</u> to less than two years. Other courts have

---

that gives consumers special rights and protections. After consultation with an attorney of my own selection, I voluntarily consent to this waiver."

Tex. Bus. & Com. Code § 17.42(c). Because the Court has already found that the "as is" provision does not apply to these claims, this argument has no bearing on the outcome of this Motion.

agreed with this interpretation. See Ceyala v. Am. Pinnacle Mgmt. Servs., LLC, No. 3:13–CV–1096–D, 2013 WL 4603165, at * 5 (N.D. Tex. Aug. 29, 2013) (holding that plaintiff did not meet burden of establishing that her employment agreement conflicted with § 16.070 where she brought suit under Title VII and not on a stipulation, contract, or agreement); Vincent v. Comerica Bank, No. H–05–2302, 2006 WL 1295494, at *4 (S.D. Tex. May 10, 2006) (holding that plaintiff's reliance on § 16.070 was "misplaced" because she asserted a defamation claim and was not suing on a stipulation, contract, or agreement); Adevereaux v. Sports & Fitness Clubs of Am., Inc., No. 3–03–CV–2824–L, 2004 WL 414896, at *2 (N.D. Tex. Feb. 17, 2004) (rejecting plaintiff's reliance on § 16.070 where he asserted claims for race and age discrimination and did not sue on a stipulation, contract, or agreement). Thus, while § 16.070 would operate to invalidate § 6.18 to the extent that section bars claims for breach of contract brought more than six months after closing, it has no bearing on the fraud and DTPA claims brought by either party in this case.

II.     "Exempt Transaction" Under the DTPA

Arnold also argues that the Agreement qualifies as an "exempt transaction" under the DTPA, thus barring DKYC's DTPA claim against him. (Dkt. # 62 ¶ 12.) The DTPA provides that claims arising from a written contract are exempt if:

11

(1) the contract relates to a transaction, a project, or a set of transactions related to the same project involving total consideration by the consumer of more than $100,000;
(2) in negotiating the contract the consumer is represented by legal counsel who is not directly or indirectly identified, suggested, or selected by the defendant or an agent of the defendant, and
(3) the contract does not involve the consumer's residence.

Tex. Bus. & Com. Code § 17.49(f). Arnold argues that the transaction in this case meets each element of an exempt transaction, and as such, DKYC's claims for violations of the DTPA are barred as a matter of law. (Dkt. # 62 ¶¶ 12–13.) DKYC responds that one of the representations upon which its DTPA claim is based—namely, Arnold's representations regarding his need for administrative assistance—occurred post-closing, and thus does not "arise out of" the written Agreement. (Dkt. # 65 at 5.)

As discussed above, the Court has already concluded that DKYC's DTPA claims are foreclosed by § 6.18 to the extent those claims are based on representations made prior to closing. Thus, the Court must now decide whether claims based on alleged misrepresentations Arnold made after closing are exempt from the DTPA. Although no Texas court has interpreted the phrase "arising from a written contract" in the context of DTPA exemptions, the Court finds that Arnold's representation regarding the need for administrative assistance in Michigan does arise out of the Agreement. Specifically, it arises out of the Employment Agreement which is attached to the Asset Purchase Agreement as

12

Exhibit E.  (Dkt. # 62-1, Ex. E.)  The Employment Agreement is not separate from the Asset Purchase Agreement; the definitions section of the Asset Purchase Agreement provides that the "Agreement" "means this Asset Purchase Agreement, including all Exhibits and Schedules."  (Id. at 1.)  Therefore, Arnold's representations to DKYC relating to his employment and need for administrative assistance "arise out of" the Asset Purchase Agreement.

The Court also finds that the other elements of an exempt transaction under § 17.49(f) are met in this case.  The consideration provided by DKYC was well over the $100,000 threshold.  In the Agreement, both parties stipulated that they "engaged and consulted with legal counsel of their choosing in connection with the negotiation, preparation, execution, and consummation of [the] Agreement."  (Dkt. # 62-1 at 10.)  Finally, the transaction did not involve a residence.  Thus, the Court finds that the transaction in this case is exempt from the DTPA pursuant to § 17.49(f) of the Texas Business and Commercial Code, thereby foreclosing DKYC's DTPA claim.

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Plaintiff's Motion for Partial Summary Judgment.  (Dkt. # 62.)  The Court grants summary judgment in favor of Arnold on DKYC's fraud, fraud by nondisclosure, and DTPA claims.  All other claims against Arnold remain.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, January 21, 2015.

_____
David Alan Ezra
Senior United States Distict Judge