UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ARNOLD & COMPANY, LLC and CRAIG ARNOLD, individually, | § § § | No. SA:13–CV–146–DAE |
| Plaintiffs, | § § | |
| vs. | § § | |
| DAVID K. YOUNG CONSULTING, LLC, | § § § | |
| Defendant. | § § | |

ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

Before the Court is a Motion for Partial Summary Judgment filed by Plaintiff Arnold & Company, LLC ("A&C"). (Dkt. # 85.) At the parties' request, the Court issues this Order without a hearing pursuant to Local Rule CV-7(h). After reviewing the Motion and supporting and opposing memoranda, and considering the parties' arguments at the hearing, the Court **DENIES** A&C's Motion for Partial Summary Judgment. (Dkt. # 79.)

BACKGROUND

On March 27, 2012, A&C and Defendant David K. Young Consulting, LLC ("DKYC") entered into an Asset Purchase Agreement (the "APA") whereby DKYC agreed to purchase the assets of A&C for the sum of $400,000. ("Young Aff.," Dkt. # 88-1 ¶ 3; "APA," Dkt. # 85, Ex. F1.) The terms

1

of payment were agreed as follows: (1) $40,000 in cash or certified check, delivered at closing; (2) $260,000 wired by DKYC's bank to A&C's account at closing; and (3) the execution of a $100,000 promissory note ("the Note"), bearing interest at the rate of 6% per annum, payable to A&C. (Id. ¶ 4.) Payment was to be made in sixty monthly installments of $1,933.28 per month beginning on May 1, 2012. ("Note," Dkt. # 88, Ex. B.) The parties agree that DKYC made payments on the Note through November 2012. ("Arnold Aff.," Dkt. # 88, Ex. A ¶¶ 5–11; Young Aff. ¶ 5.) A&C alleges that DKYC went into default on December 1, 2012 by virtue of non-payment. (Arnold Aff. ¶ 12.) A&C further alleges that the Note was accelerated on December 28, 2012, and that demand for payment was made on that date and again on February 15, 2013. (Id. ¶¶ 13–18; id., Ex. C; id., Ex. D.)

DKYC borrowed money from JPMorgan Chase Bank ("Chase") to finance the purchase. According to DKYC, Chase required both parties to sign a Subordination Agreement, which precluded DKYC from making, and A&C from accepting, any payments on the Note so long as DKYC owes money to Chase. (Young Aff. ¶ 5; "Subordination Agreement," Dkt. # 88-1, Ex. 1.) DKYC states that the payments stopped because David Young ("Young"), owner of DKYC, and Craig Arnold ("Arnold"), owner of A&C, both realized that if Young continued to pay A&C, both DKYC and A&C would be in breach of the Subordination Agreement and that Chase would accelerate the debt or collect the amount already

2

paid to A&C.  (Young Aff. ¶ 5, Dkt. # 88-1, Ex. 3.)  DKYC states that per Chase's instruction, DKYC ceased making payments on the Note.  (Young Aff. ¶ 5.)

On April 7, 2014, A&C filed its Second Amended Complaint against DKYC, which included a cause of action for suit on the Note.  (Dkt. # 61 ¶ 21.)  A&C alleges that the balance owed on the Note is $89,815.28 plus interest at the rate of 6% per annum, which is a per diem rate of $14.76 per day from December 1, 2012 until paid.  (Arnold Aff. ¶ 19.)  A&C further alleges that late payment penalties have accrued at a rate of $100.00 monthly.  (Id.)  A&C seeks recovery of the remaining unpaid principal balance and accrued and unpaid interest.  (Dkt. # 61 ¶ 21.)  On February 2, 2015, A&C filed a Partial Motion for Summary Judgment on the Promissory Note claim.  (Dkt. # 79.)  On February 20, 2014, DKYC filed its Response.  (Dkt. # 82.)  A&C did not file a Reply.

On April 27, 2015, the parties filed an Agreed Motion for Withdrawal of A&C's Partial Motion for Summary Judgment.  (Dkt. # 84.)  A&C stated that out of an abundance of caution, it decided to allow DKYC an opportunity to cure its default.  By letter dated April 20, 2015, A&C revoked the acceleration and demanded payment of the past-due installments and late penalties on the Note through May 1, 2015, in the total amount of $60,998.40.  A&C informed DKYC that if it paid the amount owed on or before May 20, 2015, A&C would dismiss its claim for collection on the Note with prejudice.  (Id. ¶ 5.)  A&C further stated that

3

in the event DKYC did not cure the default, A&C would accelerate the Note, the balance of the Note would be due in full, and A&C would continue to pursue litigation to collect the entire debt.  (Id. ¶ 6.)  The Court granted the parties' Agreed Motion for Withdrawal via text order on April 28, 2015.

DKYC did not make payment in the demanded amount by the May 20, 2015 deadline, and on July 9, 2015, A&C filed the instant re-urged Partial Motion for Summary Judgment.  (Dkt. # 85.)  On July 27, 2015, DKYC filed a Response.  (Dkt. # 88.)  On August 27, 2015, A&C filed a Reply.  (Dkt. # 93.)

## LEGAL STANDARD

Summary judgment is proper where the evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  Davis v. Fort Bend Cnty., 765 F.3d 480, 484 (5th Cir. 2014) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with specific facts that establish the existence of a genuine issue for trial.  ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).

The court evaluates the proffered evidence in the light most favorable to the nonmoving party. Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003). The court "examines the pleadings, affidavits, and other evidence introduced in the motion, resolves any factual doubts in favor of the non-movant, and determines whether a triable issue of fact exists." Leghart v. Hauk, 25 F. Supp. 2d 748, 751 (W.D. Tex. 1998). However, "[u]nsubstantied assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).

## DISCUSSION

A&C argues that summary judgment should be granted on the Promissory Note claim because the evidence clearly establishes the existence of the Note, that DKYC executed the Note in favor of A&C, that A&C is a holder entitled to enforce the instrument, and that DKYC defaulted on the Note by failing to pay the installment due on December 1, 2012 and every subsequent installment since that date. (Dkt. # 85 at 14.) DKYC responds that summary judgment is improper for three reasons. First, the Subordination Agreement prohibits DKYC from paying on the Note. (Dkt. # 88 at 3.) Second, A&C and Arnold's material breaches of the APA and ancillary Employment and Non-Competition Agreements discharges DKYC's obligation to pay on the Note. (Id. at 4.) Finally, the breaches

5

of the APA, Employment Agreement, and Non-Competition Agreement constitute a failure of consideration under the Note. (Id. at 8.)

I.     Acceleration of Note

A&C contends that it had the right to accelerate the Note under the terms of the APA, and that it properly exercised that right. (Dkt. # 85 at 15.) The APA provides, in relevant part: "Should Purchaser fail to pay any installment when due, then the Seller shall have the option to accelerate the payment of the full principal sum and accrued interest payable." (APA at 2.) The Court has already held that the exhibits to the APA, including the Promissory Note, are not separate from the APA because the definitions section of the APA provides that the term "Agreement" "means this Asset Purchase Agreement, including all Exhibits and Schedules." (See Dkt. # 78 at 12–13.) Therefore, the Court agrees with A&C that the acceleration clause in the APA applies to the Note, which is attached to the APA as an exhibit, and that the acceleration clause gave A&C the right to accelerate the Note.

Under Texas law, effective acceleration of a promissory note "requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration." Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001). "Both notices must be clear and unequivocal." Id. (internal quotation marks omitted). Here, A&C alleges that the Note was accelerated on December 28, 2012,

and that it first sent demand for payment on that date. (Arnold Aff. ¶¶ 13–14; Dkt. # 85, Ex. C.) The letter A&C's counsel sent to DKYC on December 28 states that the Note was in default, that A&C had elected to accelerate the Note under the terms of the APA, and that A&C was demanding payment in full together with all accrued interest and applicable late charges. (Dkt. # 85, Ex. C.) The December 28 letter thus included both a notice of intent to accelerate and a notice of acceleration. However, A&C was required to send notice of its intent to accelerate the Note <u>before</u> demanding payment. <u>Ogden v. Gibralter Sav. Ass'n</u>, 640 S.W.2d 232, 233 (Tex. 1982) (stating that "the holder of a delinquent installment note must . . . demand payment of the past due installments prior to exercising his right to accelerate"). Therefore, the Court finds that the December 28 letter was insufficient to provide notice of intent to accelerate the Note.

In response to DKYC's arguments regarding the insufficiency of notice, A&C withdrew its Partial Motion for Summary Judgment. (Dkt. # 84.) On April 20, 2015, A&C's counsel sent a letter to DKYC's attorney providing notice that if DKYC did not cure the default by May 20, 2015, A&C would accelerate the Note. ("Watson Decl.," Dkt. # 85, Ex. G ¶ 4–5; Dkt. # 85, Ex. G1.) DKYC did not pay the amount demanded by the deadline. (Watson Decl. ¶ 6.) On June 17, 2015, A&C's counsel sent another letter to DKYC's attorney giving notice that the Note was accelerated and that the balance was due in full. (<u>Id.</u> ¶ 7; Dkt. # 85, Ex.

7

G2.) DKYC does not dispute that these letters constitute effective acceleration of the Note, and the Court finds that the April 20, 2015 and June 17, 2015 letters properly provided clear and unequivocal notice of intent to accelerate and notice of acceleration under Texas law.[1]

However, DKYC argues that summary judgment is nevertheless improper because (1) the Subordination Agreement prohibits DKYC from paying on the Note, (2) A&C's material breach of the APA discharges DKYC's obligation to pay on the Note, and (3) A&C's breaches of contract constitute a failure of consideration under the Note. (Dkt. # 88.) The Court discusses each argument below.

II. Subordination Agreement

DKYC argues that summary judgment is improper because the Subordination Agreement prevents DKYC from paying on the Note. (Dkt. # 88 at 3.) A subordination agreement that benefits Chase, which is a non-party to this action, can be used as a defense against A&C's claim on the Note if DKYC can show that Chase would treat collection of the Note as a breach of the

[1] A&C argues that it was not required to give formal notice of intent to accelerate and demand for the past due balance because such efforts would have been futile. (Dkt. # 85 at 16–18.) Texas law holds that "where repeated demands for payment of past due installments have been fruitless, further formal presentments may be excused under certain circumstances." Allen Sales & Servicenter, Inc. v. Ryan, 525 S.W.2d 863, 866 (Tex. 1975). Because the Court finds that A&C provided proper notice of intent to accelerate and acceleration in its April 20, 2015 and June 17, 2015 letters, the Court does not reach this argument.

Subordination Agreement. Tamsco, Inc. v. Janus, 553 S.W.2d 244, 246 (Tex. App. 1977). A&C responds that DKCY's position is directly at odds with the plain language of the Subordination Agreement. (Dkt. # 85 at 18–19.)

The Subordination Agreement provides that DKYC's debt to A&C is subordinate to DKYC's superior debt to Chase. In a section titled "Payments to Creditors," it further provides that DKYC will not make, and A&C will not accept, any payment on the Note as long as DKYC still owes a debt to Chase. (Young Aff. ¶ 5; Subordination Agreement at 1.) However, the Subordination Agreement also states that:

> Notwithstanding any prohibition on payments to [A&C] provided for in the section of the Agreement captioned "Payments to Creditors," [DKYC] may make regularly scheduled payments to [A&C] (other than any prepayment of principal) in accordance with the terms of the Subordinated Indebtedness so long as no Event of Default under any Related Document has occurred and is continuing, or would result from the payment of any such regularly scheduled payment.

(Subordination Agreement at 2) (emphasis added). A&C argues that the second provision expressly authorizes regular payments to A&C in the absence of any default on the Chase loan. (Dkt. # 85 at 20.)

The Court need not decide whether these provisions conflict, because the relevant issue is whether Chase would treat payment to A&C as a breach of the Subordination Agreement. See Tamsco, 553 S.W.2d at 246. DKYC presents evidence that on November 14, 2012, Chase representative David Navarro

9

informed DKYC that per the terms of the Subordination Agreement, no payment on the Note was to be made, and in the event that such a payment had been made, Chase would have the right to collect the full superior debt or collect any amount paid to A&C and apply it to the superior debt.  (Young Aff. ¶ 5; Dkt. # 88-1 at 32.) Additionally, Collin M. Degge, Chase's corporate representative, testified to his belief that no payments could be made to A&C as long as DKYC owed a debt to Chase, and that making payments to A&C would result in default of the debt to Chase.  ("Degge Dep.," Dkt. # 88-2 at 41:14–11; 43:16–20.)

       A&C argues that Degge's testimony is both unreliable and refuted by (1) the plain language of the Subordination Agreement, (2) the fact that Chase has never claimed default or that A&C breached the Agreement, and (3) the fact that Chase has allowed DKYC to pay another subordinated creditor in the same manner that A&C was being paid, demonstrating Chase's willingness to permit payments to subordinated creditors as long as DKYC remains current on its loan.  (Dkt. # 85 at 23.)  Again, the relevant issue is whether Chase would have considered payment on the Note as a breach of the Subordination Agreement.  Furthermore, at the summary judgment stage, the Court rules on questions of law only and does not weigh evidence.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  The Court finds that the Navarro letter and Degge's testimony at least raise a genuine issue of fact as to whether Chase would treat payments to A&C as a breach of the

Subordination Agreement, and the Subordination Agreement provides a defense against A&C's claim on the Note at this stage of the litigation. Because the Court finds that A&C's Motion must be denied on these grounds, the Court does not reach the parties' remaining arguments regarding A&C and Arnold's alleged breaches of the APA and ancillary contracts or consideration under the APA.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** A&C's Motion for Partial Summary Judgment. (Dkt. # 85.)

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, September 30, 2015.

_____
David Alan Ezra
Senior United States Distict Judge